**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| DIETGOAL INNOVATIONS LLC, | |
| Plaintiff, | Civil Action No.  2:12-CV-00337-MHS-CMC |
| v. | Jury Trial Demanded |
| TIME INC., | |
| Defendant. | |

**DEFENDANT TIME INC.'S MOTION TO TRANSFER**
**VENUE TO THE SOUTHERN DISTRICT OF NEW YORK**

Pursuant to 28 U.S.C. § 1404, Defendant Time Inc. ("Time") respectfully moves this Court to transfer this action to the Southern District of New York for the convenience of the witnesses and parties and in the interest of justice.

## I.  <u>INTRODUCTION</u>

This case against Time should be transferred because it has absolutely "no relevant factual connection to the Eastern District of Texas."  *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).  Instead, it is in or near the Southern District of New York where the locus of the operative facts alleged against Time exists and where the relevant documents, evidence, and witnesses are located.  Simply put, there is no good reason to keep this case in the Eastern District of Texas.

The key facts that render the Southern District of New York "clearly more convenient" than this District include:

- Time, its witnesses, and its documents are all located in New York City;

- All the known non-party witnesses are located in or near New York City, including former Time employees who developed the accused feature, prior art witnesses, and the named inventor and prosecuting attorney of the asserted patent;

- Plaintiff's owners both reside in New York City;

- Plaintiff, while pretending to be a Texas entity located in Austin, was formed just one day before filing its first patent lawsuit, has no business operations in Texas (other than this litigation), and has no offices or employees in Texas;

- There are <u>**no**</u> known party or non-party witnesses or evidence in this District; and

- The fact that Plaintiff has filed other cases in this District, all of which are still in their infancy, cannot trump all of the factors that point decisively in favor of transfer.

The Federal Circuit has made clear that, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo Co., Ltd.*, 589 F.3d

1194, 1198 (Fed. Cir. 2009).  That is the case here.  Because all relevant factors governing

transfer weigh strongly in favor of transfer and no such factors favor remaining in this District,

Time's motion to transfer should be granted.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   DietGoal Has No Apparent Connection To This District

Plaintiff DietGoal Innovations LLC ("Plaintiff" or "DietGoal") asserts that it is a Texas

limited liability company based in Austin, Texas (which is in the Western District of Texas) and

that it is the "exclusive licensee of the '516 patent." (Compl. ¶¶ 1, 8 (Dkt. No. 1).)  However,

DietGoal was in fact incorporated in Texas just one day before it filed its first lawsuit.  (Decl. of

Chris Carraway ("Carraway Decl.") ¶ 2, Ex. A.)  DietGoal has two principal members, Daniel

Mitry and Timothy Salmon, both of whom are New York attorneys who reside in New York City

(in the Southern District of New York). (*Id.,* ¶¶ 2-4; Exs. A-C.)  No known connection exists

between the State of Texas and DietGoal's two New York-based principals.  (*Id.*, ¶ 5.)

Plaintiff has 15 pending actions in this District, all asserting infringement of U.S. Patent

No. 6,585,516 (the "'516 patent").  The first, against 47 defendants, was filed on September 15,

2011, before the America Invents Act ("AIA") went into effect.   Defendants in that action

recently answered and the scheduling conference is set for August 29, 2012.  Further, motions to

transfer were filed by ten different defendants.  *See DietGoal Innovations LLC v. Arby's*

*Restaurant Group, Inc.*, Case No. 2:11-cv-00418-MHS-CMC (E.D. Tex.) (hereafter the "First

Case").[1]  Several of these transfer motions in the First Case were brought by New York-

headquartered defendants seeking transfer to the Southern District of New York.  There have

---

[1]  Pending motions to transfer in the First Case are Docket Nos. 230, 283, 287, 292, 294, 296, 307, 321, 373.

been no substantive actions taken in the First Case.

In 2012, after the AIA was in effect, DietGoal attempted to bring over a dozen new defendants, including Time, into its First Case, but the Court refused to permit this.  (*Id.*, Dkt. No. 445.)  DietGoal then proceeded to file new separate lawsuits against those additional defendants, including Time.  *See* Case Nos. 2:12-cv-00327 to 2:12-cv-00340.  The Court has not issued any substantive decisions or conducted any hearings in any of these new actions.

DietGoal has no known employees in the State of Texas, and it conducts no known business in Texas, other than filing these lawsuits.  (Carraway Decl., ¶ 5 & Ex. D.)  Indeed, DietGoal's own corporate filings list its address as 212 East 47th Street, Apartment 24J, New York, New York 10017, which appears to be a residence.  (*Id.* ¶ 6, Ex. E.)  In contrast, DietGoal's purported place of business in Austin, Texas is actually just the address of the registered agent involved in incorporating the company.  (*Id.* ¶¶ 2-5; Exs. A, D.)

DietGoal has had ample opportunity to identify any connection to this District in the nine oppositions it filed to motions to transfer in the First Case.  Indeed, in th7ose First Case transfer oppositions, DietGoal did not contest these facts discussed in the paragraphs above and did not identify any connection with or evidence in this District.  (*E.g.*, First Case, Dkt. Nos. 333-336.)

**B.    Time, Its Witnesses, And Its Documents Are In The Southern District Of New York**

Time has substantial connections to the Southern District of New York.  Time's principal place of business is in New York City.  (Declaration of Andrew Lachow, ¶ 2.)  Likewise, Time's documents and witnesses are located there.  (*Id.*, ¶¶ 4-5.)  For example, some of Time's New York-based employees who likely have technical, marketing, or financial information regarding the accused realsimple.com website include Todd Chandler, Amanda Hanes, and Shannon King.  (*Id.*)  In contrast, Time has no employees, no witnesses, and no documents relating to the

accused www.realsimple.com website in this District.  (*Id.*, ¶ 7.)

C. **Nearly All Known Non-Party Witnesses Are
Located In Or Near The Southern District Of New York**

Nearly all of the known non-party witnesses are located in New York or in a location that is much closer to New York than to Texas, including the named inventor and prosecuting attorney of the asserted patent, former Time Inc. employees who developed the accused feature and prior art witnesses.  **None** is located in Texas.  In particular, given the accused technologies, likely important non-party witnesses include at least the following:

| Witness | Location | Knowledge |
|---|---|---|
| Oliver Alabaster | Alexandria, Virginia | Named inventor on the asserted '516 patent |
| Steven Kelber | Potomac, Maryland | Prosecuting attorney of the '516 patent |
| DietFit | Alexandria, Virginia | Named inventor's company that identifies its products as built using the '516 patent |
| Gail Horwood | New York City | Former Time employee who has knowledge of prior art recipe website Epicurious.com and of the development of Time's accused technology |
| Ira Tau | New York City | Former Time employee who has knowledge of development of Time's accused technology |
| Lisa Michurski | New York City | Former Time employee who has knowledge of development of Time's accused technology |
| Conde Nast employees | New York City | Knowledge of prior art recipe website Epicurious.com |

III.   **THE CASE SHOULD BE TRANSFERRED
TO THE SOUTHERN DISTRICT OF NEW YORK**

The venue transfer statute provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Section 1404(a) gives courts the discretion, and in some cases the duty, to transfer an action to a forum if it is "clearly more convenient" than the venue chosen by the plaintiff.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) ("*Volkswagen II*"); *see also In re TS Tech USA*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *Droplets, Inc. v. E*Trade Fin. Corp.* (*Droplets I*), 2012 WL 3133398, at *2 (E.D.

Tex. Mar. 5, 2012) (Craven, M.J.) (granting transfer).[2]  The party seeking transfer has the burden to show "good cause" for transfer.  *Volkswagen II*, 545 F.3d at 315.

The preliminary inquiry under Section 1404(a) is whether the case could have been filed in the district to which transfer is sought.  *Volkswagen II*, 545 F.3d at 312.  There can be no dispute that this case could have been brought in the Southern District of New York:  that district has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), venue is proper there, the plaintiff's owners appear to reside there, and Time is located and amenable to process there.

Once that threshold inquiry is met, the court must consider the convenience of the parties and witnesses in both forums.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  "A convenience determination consists of balancing the conveniences and inconveniences resulting from the plaintiff's choice of venue, in comparison with those of the proposed venue."  *Droplets I*, 2012 WL 3133398, at *2.  Under Fifth Circuit law, this balancing includes examining "public" and "private" factors relating to the convenience of parties and witnesses, as well as the interest of particular venues in hearing the case, to determine whether the transferee venue is "clearly more convenient than the venue chosen by the plaintiff." *Volkswagen II*, 545 F.3d at 315.

None of the factors is dispositive.  *Volkswagen I*, 371 F.3d at 203.  Instead, the analysis of the factors requires "individualized, case-by-case consideration of convenience and fairness." *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (internal quotation omitted).  Where analysis of these factors shows that another venue is "clearly more convenient," cases in this district not only may, but should, be transferred.  *See TS Tech*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

_____

[2] Copies of Westlaw and slip opinions are attached as Exhibit Z to the Carraway Declaration.

**A.      The "Private" Interest Factors Strongly Favor Transfer**

The "private interest" factors include:  "(1) the relative ease of access to sources of proof;

(2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case

easy, expeditious and inexpensive."  *Volkswagen I*, 371 F.3d at 203 (internal quotation omitted).

No party, no identified witness, and no known source of proof is located in this District.  In

contrast, many witnesses and all known evidence are located in or near the Southern District of

New York.  Thus, all of these factors strongly favor a transfer.

**1.      The Southern District Of New York Is A More
Convenient Forum For Both Party and Non-party Witnesses**

The cost of attendance for willing witnesses strongly favors transfer because New York is

a far more convenient forum for both non-party and party witnesses.  "The convenience of

witnesses is probably the single most important factor in a transfer analysis."  *Genentech*, 566

F.3d at 1342 (citation omitted).  The "[a]dditional distance [from home] means additional travel

time; additional travel time increases the probability for meal and lodging expenses; and

additional travel time with overnight stays increases the time which these fact witnesses must be

away from their regular employment."  *TS Tech*, 551 F.3d at 1320 (quoting *Volkswagen I*, 371

F.3d at 205).  As a result, the Fifth Circuit has adopted a "100-mile" rule, pursuant to which

"when the distance between an existing venue for trial . . . and a proposed venue under § 1404(a)

is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship

to the additional distance to be traveled."  *Id.* (internal quotation omitted).  For this factor to

favor transfer, the proposed venue need not be more convenient for all the witnesses.  Instead,

"this factor can favor transfer 'when a substantial number of material witnesses reside in the

transferee venue' and no witnesses reside in plaintiff's chosen venue." *Droplets I*, 2012 WL 3133398, at *4 (quoting *Genentech*, 566 F.3d at 1345).

This is the case here.  A large number of the witnesses reside in the Southern District of New York, while no known witnesses reside in or near the Eastern District of Texas:

Time:  Time's principal place of business is in the Southern District of New York. (Lachow Decl., ¶ 2.)  Time manages the development and operation of the accused www.realsimple.com website in its offices in New York.  (*Id.*, ¶ 4.)  Time's party witnesses regarding the accused website are in New York City as well, including specific employees Todd Chandler, Amanda Hanes, and Shannon King.  (*Id.*, ¶ 2, 4, 5.)

Former Employees of Time:  The accused www.realsimple.com recipe search feature utilizes technology developed by Time years ago called the AOL Food "Recipe Finder."  (*Id.*, ¶ 6.)  The design and development of that AOL Food website included a number of people who are no longer employed by Time, including Gail Horwood, Ira Tau, and Lisa Michurski.  (*Id.*)  These non-party witnesses would likely have knowledge of the design and development of this Time technology.  (*Id.*)  As shown in the chart on page 4, all work in New York City.  (*Id.*)

DietGoal:  While Plaintiff DietGoal was registered as a Texas company, its only managing members, lawyers Daniel Mitry and Timothy Salmon, both are New York residents, and have resided in New York for several years. (Carraway Decl. ¶¶ 12-13, Exs. K-L.)  DietGoal has no other known employees, and therefore it appears that DietGoal has no witness who resides in Texas.  (*Id.* ¶ 5.)   Further, the address that DietGoal's incorporation papers list as its Texas registered agent is in the Western District, not Eastern District, of Texas.

'516 Patent Inventor and Prosecuting Attorney:  Oliver Alabaster, inventor of the '516 patent, and Steven B. Kelber, the attorney who prosecuted the patent, are located roughly 200

7

miles from New York City.  (*See* Compl. Ex. A at 1.)  Mr. Alabaster and his company, DietFit, which purports to practice the '516 patent, are located in Alexandria, Virginia. (Carraway Decl. ¶¶ 7, 9-10, Exs. F, H, I.)  Mr. Kelber is located in Bethesda, Maryland.  (*Id.* ¶ 11, Ex. J.)  Both Alexandria and Bethesda are less than 250 miles from New York City but more than 1,200 miles from this District.  (*Id.*)

   Prior Art Witnesses:  Two of the eleven U.S. patent and patent application cited references on the '516 patent list inventors located in New York State.  (Carraway Decl. ¶¶ 15, 17, Exs. N, P.)  Two other patents list inventors in Virginia and another patent's inventor is listed as located in Vermont.  (*Id.* ¶¶ 16, 20, Exs. O, S, T.)  Of the remaining six cited patents, three list inventors in Japan, two list inventors in California and one lists an inventor in Arizona.  (*Id.* ¶¶ 14, 18-19, 22-24, Exs. M, Q-R, U-W.)  None of these patents list a single inventor in Texas. (*Id.*)  Additional prior art witnesses likely will be in New York.  For example, Time has discovered a prior art recipe finder on the 2000 version of Conde Nast's Epicurious.com website, which will be supported by evidence and witnesses located in the Southern District of New York. (Carraway Decl., ¶ 25, Exs. X, Y.)

   Because no known witness is located in this District, and the majority of identified witnesses are located in the Southern District of New York or nearby, the convenience of the witnesses clearly favors transfer to New York.  *See Genentech*, 566 F. 3d at 1343.

### 2.    The Overwhelming Majority Of The Potential Evidence Is Located In The Southern District Of New York

   The sources of proof strongly favor transfer because almost all of the relevant documentary evidence is in the Southern District of New York while no known documentary evidence originates in the eastern District of Texas.  In patent cases, "the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345.  Thus, "the

place where defendant's documents are kept weighs in favor of transfer to that location." *Id.*  In the present action, that location is the Southern District of New York, because not only are Time's witnesses located in New York, as discussed above, but so are its documents.  (Lachow Decl., ¶ 4.)  Thus, Time would face unnecessary burdens transporting its documents to the Eastern District of Texas, but would not face those burdens if the case is transferred.

In contrast, none of Time's documents are located in Texas, and Time is not aware of any other relevant documents whatsoever that originate in or are kept in the Eastern District of Texas by anyone.  (*Id.*, ¶ 7.)  To the extent that DietGoal has any documents located in Texas, those documents are not entitled to any significant weight for this factor.  As the Federal Circuit has held, most of the relevant documents come from the accused infringer, not the patentee. *Genentech*, 566 F.3d at 1345.  Furthermore, because DietGoal was incorporated in Texas by two New York City individuals just before it filed its first action in this District, whatever documents it has in this District must have been transferred there from New York only in anticipation of litigation, and, therefore, should not be considered "Texas" documents for purposes of a transfer analysis. *Hoffmann-La Roche*, 587 F.3d at 1336-37 (holding that documents transferred in anticipation of litigation are not entitled to weight in a transfer analysis).

In sum, because the overwhelming majority of the relevant documentary evidence is located in the Southern District of New York and no known evidence is located in this District, this factor also strongly favors transfer. *See, e.g., In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (sources of proof factor favored transfer when it appeared that a significant portion of the evidence would be located in the proposed transferee district); *Genentech*, 566 F.3d at 1345 (same).

### 3.     The Southern District Of New York Has __Absolute Subpoena Power Over Many Potential Witnesses__

The ability of the court to compel witnesses for deposition and trial supports transfer to the Southern District of New York.  Notably, no known non-party witness resides in this District or anywhere near it.  As a result, this Court cannot compel the attendance of a single known non-party witness.  In contrast, the Southern District of New York can compel attendance of a number of non-party witnesses, including all of those identified on page 4.  Moreover, given that Time is based in New York and DietGoal's principals also reside there, any additional non-party witnesses who might be identified are far more likely to live in New York than in the Eastern District of Texas.  For all these reasons, this factor also tips decidedly in favor of transfer.  *See Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

### 4.     Judicial Economy And Other Practical __Problems Do Not Weigh Against Transfer__

Because this case is in its infancy, there are no practical problems with transfer.  This Court has not invested significant resources in the merits of this case or any case involving DietGoal and/or the '516 patent.  Transfer should not delay this case.

Judicial economy likewise does not favor this District's retention of this case.  Even though there are multiple suits accusing a number of defendants of infringing the same patent, none of those suits have progressed beyond the initial pleading stage.  This Court and this District have no particular knowledge of the patent or its technology.  Indeed, none of the Plaintiff's cases has yet had a scheduling conference.  Further, many of the defendants have likewise moved to transfer, including a number of other New York-based companies which also have sought transfer to the Southern District of New York.

In situations like this one in which no case involving the patent has progressed to claim construction, the existence of other cases or defendants in this District cannot trump the other factors favoring transfer.  As this Court recently noted, "[t]he Federal Circuit has 'considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue.' *Droplets I*, 2012 WL 3133398, at *7 (*quoting In re Morgan Stanley*, 417 Fed. App'x 947, 949 (Fed. Cir. Apr. 6, 2011)).  For example, in the *Droplets* cases, this Court transferred some defendants to New York and some defendants to California, but retained others in the Eastern District of Texas, carefully applying the convenience factors to each defendant and holding:  "In sum, considerations of judicial economy and court congestion are outweighed by the location of sources of proof, the availability of compulsory process, and the convenience of witnesses."  *See Droplets, Inc. v. eBay, Inc.* Case No. 2:12-cv-389-MHS-CMC, Dkt. No. 1, slip op. at 14 (E.D. Tex. July 2, 2012) (Craven, M.J.).[3]

## B.    The "Public" Interest Factors Strongly Favor Transfer

The "public interest" factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems with conflicts of laws or in the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (internal quotation omitted).  Because the Southern District of New York has a significant localized interest in the facts of this case, while this District has none, and because the other factors are neutral, the public interest factors strongly favor transfer.

---

[3] *See also H-W Tech., L.C. v. Apple, Inc.*, Case No. 3:11-cv-651-G-BH, Dkt. No. 369, slip op. at 20-21 (N.D. Tex. July 5, 2012) (severing case and transferring some defendants to California and finding that judicial economy did not trump other factors prior to claim construction); *Signal Tech. LLC v. Analog Devices, Inc.*, Case No. 11-1073-RGA, Dkt. No. 23, slip op. at 7 (D. Del. April 3, 2012) (transferring one case based on convenience factors despite presence of another case before same judge involving same patent because cases were still "at their inception").

1.     **New York Has A Strong Localized
Interest In This Case, While This District Does Not**

The public interest factor in having the "localized interest" decided in the "local" venue heavily weighs in favor of transfer here.  The Fifth Circuit has explained that "[j]ury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Volkswagen* I, 371 F.3d at 206.  The burden imposed on a juror is lessened where the dispute involves local entities or events.  *Id.* at 205-06; *Volkswagen II*, 545 F.3d at 307-08, 316-18.  Thus, in weighing the relative "localized interests" in the transferee and transferor forum that are implied by the litigation, courts consider whether the transferee or transferor forum "has an interest – that is, a stake in – the resolution of [the] controversy," over and above the interest of any other forum within the United States.  *Volkswagen II*, 545 F.3d at 318; *Aten Intern. Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 125-26 (E.D. Tex. 2009).  In analyzing this factor, courts consider the "factual connection" that a case has with the respective transferee and transferor venues.  *Volkswagen I*, 371 F.3d at 206.

The Southern District of New York has a substantial factual connection to this case because this litigation involves local entities and people, both for DietGoal and Time.  First, Time is based in the Southern District of New York, and its accused technology was developed in New York by its New York employees and former employees.  (Lachow Decl., ¶¶ 2, 4-6).  Second, DietGoal's principals are located in that district.  (Carraway Decl., ¶¶ 12-13, Exs. K, L.)  New York has an interest in resolving issues relating to the liability and damages of its New York entities.  Finally, the majority of the relevant sources of proof, including the majority of likely witnesses, are in New York, giving the Southern District of New York a compelling interest in the outcome of this litigation.

In contrast, the Eastern District of Texas has no real interest in the case, as no parties maintain any headquarters, employees, or facilities here, no development work by any party occurred here, and no prior art work or witnesses are located here.  DietGoal cannot rely on its recent incorporation in Texas to manufacture a "local interest."[4]  DietGoal was formed a day before it filed its First Case and still—almost a year later—does not appear to have any real presence in Texas.  It appears to have no office or employees in Texas.  )  It has no actual business to speak of beyond prosecuting its lawsuits.  (*Id.* ¶ 5.)  Even its pro forma presence— the address of its registered agent—is in Austin, Texas, which is in the Western District of Texas. Under these circumstances, DietGoal is clearly "recent, ephemeral, and an artifact of litigation," and, therefore, its choice of venue is not entitled to any deference.  *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *see also, e.g., In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (ignoring location of plaintiff in transfer analysis because it had no Texas employees and had incorporated in Texas a mere "sixteen days before filing suit"); *Software Rights Archive, LLC v. Google, Inc.*, 2010 WL 2950351, at *4-5 (E.D. Tex. July 22, 2010) (transferring case even though the case had "progressed significantly since filing, and the court ha[d] become familiar with the parties' claim" where "the location of sources of proof strongly favors transfer, the cost of attendance of willing witnesses and local interest favor transfer, and the availability of compulsory process slightly favors transfer").

---

[4] Nor can Plaintiff rely on the mere fact that the allegedly infringing website is accessible in Texas (along with every other district in the United States).  When products are sold or websites are available nationwide, including in the Eastern District of Texas, the citizens of the Eastern District of Texas have no more or less of a meaningful connection to the case than any other venue.  *TS Tech*, 551 F.3d at 1321; *see also Fujitsu*, 639 F. Supp. 2d at 769 ("Generally, local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of particularized local interests.").

Moreover, DietGoal's two principals are New York residents.  (Carraway Decl., ¶¶ 12-13, Exs. K, L.)  If DietGoal can be said to be located anywhere, it is in New York, making this, in essence, a dispute between two New York entities.  To the extent DietGoal's activities have any "local interest," it would be in New York, where its owners live and presumably direct its litigation business.

Thus, this District cannot claim to have any particularized interest in this case, while the Southern District of New York has a strong local interest in resolving this dispute.  This factor also points strongly towards transfer.

### 2.     The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral.  A proposed transferee court's "less congested docket" and "ab[ility] to resolve this dispute more quickly" is a factor to be considered.  *Hoffmann-La Roche*, 587 F.3d at 1336.  However, this factor is the "most speculative."  *Genentech*, 566 F.3d at 1347.  Here, the median time to disposition in this District is 23.2 months, while in the Southern District of New York it is 31.1 months.  Because these times to disposal are not that significantly different and this factor is the "most speculative," this factor is neutral.  *See On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010) (finding a five-month difference between the two districts' time to trial insignificant).[5]  Nonetheless, even if this difference were considered significant, where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors."  *Genentech*, 566 F.3d at 1347.

---

[5]  Moreover, the Eastern District of Texas has recently seen an increase in each judge's caseload, which makes it uncertain whether the median time to disposition will remain at its current level.

The other public factors are neutral as well:  both districts are equally capable of applying federal law, and no conflict of law issues arise in either venue.

C.    **Summary of the Factors**

In sum, the convenience of both parties – Time and the Plaintiff – and the non-party witnesses, location of documents, availability of subpoena power, and local interest all strongly favor transfer while no factor at all favors retaining this case in this District.  Any remaining factors are at best neutral.  On balance, the factors show that the Southern District of New York is a clearly more convenient forum.

IV.    **CONCLUSION**

This case presents a perfect example of one that should have been filed elsewhere, but instead appears to have been filed here solely through improper forum shopping.  Plaintiff's two New York owners manufactured a Texas company just one day before filing its first lawsuits, and then proceeded to sue in this District many New York companies, whose witnesses, documents, and development activities are in New York.  Section 1404 exists to correct such abuses of venue.  Because the Southern District of New York is far more convenient for the parties, their witnesses, and numerous non-party witnesses, has absolute subpoena power over numerous witnesses, and has a specific local interest in the resolution of this dispute, while this District is the location of no parties, no witnesses, no documents, and no local interest, the transfer factors point decisively in favor of transfer.

Accordingly, Time respectfully requests that the Court transfer this case to the Southern District of New York.

Respectfully submitted,

Dated:  August 8, 2012          By:     _/s/_ J. Christopher Carraway_____
                                        J. Christopher Carraway (OR Bar No. 961723)
                                        christopher.carraway@klarquist.com

15

Salumeh R. Loesch (OR Bar No. 090074)
salumeh.loesch@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon  97204
Telephone:  (503) 595-5300
Facsimile:  (503) 595-5301

*Attorneys for Defendant Time Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 8, 2012 a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/* J. Christopher Carraway
J. Christopher Carraway

## <u>CERTIFICATE OF CONFERENCE</u>

On August 8, 2012, counsel for Defendant Time conferred by phone with Chris Joe, counsel for Plaintiff, and Plaintiff is opposed to Time's motion to transfer.

*/s/* J. Christopher Carraway
J. Christopher Carraway
