IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DIETGOAL INNOVATIONS LLC, § | |
| § | |
| *Plaintiff,* § | |
| § | Civil Action No. 2:12-cv-00337-MHS-CMC |
| v. § | |
| § | Jury Trial Demanded |
| TIME, INC., § | |
| § | |
| *Defendant.* § | |

**PLAINTIFF DIETGOAL INNOVATIONS LLC'S RESPONSE TO TIME, INC.'S
MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK**

Plaintiff DietGoal Innovations LLC "(DietGoal") files this Response to the Motion to Transfer Venue to the Southern District of New York filed by Defendant Time, Inc. ("Time") (Dkt. 15 filed August 8, 2012).

**INTRODUCTION**

Defendant Time seeks a transfer of the severed action to its home forum of the Southern District of New York pursuant to 28 U.S.C. § 1404(a). DietGoal does not oppose the severance of its claims against Time, although DietGoal contends that that it's claims against Time should be consolidated for pretrial purposes under Rule 42 of the Federal Rules of Civil Procedure with the other co-pending lawsuits brought by DietGoal in this Court involving the same patent and issues.

Time's motion to transfer, however, should be denied. First and foremost, transferring DietGoal's claims against Time to New York would create the existence of multiple lawsuits in different forums involving the same issues resulting wasteful duplicative litigation causing a waste of the parties' time and money and judicial resources contrary to the interests of justice and judicial economy. Furthermore, Time has not identified any specific volume of documents or third party witnesses with knowledge of relevant facts located in or near the proposed transferee forum. Thus, apart from the fact that judicially economy

weighs heavily against transfer of venue, Time has not satisfied its heavy burden of showing that the transferee venue is clearly more convenient than DietGoal's chosen forum.

## BACKGROUND

**Background of the DietGoal Litigation**. DietGoal's patent infringement claims against Time concern a single patent – U.S. Patent No. 6,585,516 (the "`516 patent"). The `516 patent is entitled "Method and System for Computerized Visual Behavior Analysis, Training, and Planning," and relates generally to web-based computerized meal or recipe planning interfaces available on websites.

DietGoal's patent infringement claims against Time are among the patent infringement claims DietGoal has asserted against 47 active defendants in 17 lawsuits pending in this Court (the "DietGoal litigation"). *See* Parties' Joint Discovery and Case Management Plan, Dkt No. 527, *DietGoal Innovations LLC v. Arby's Restaurant group, Inc.,* Civil Action No. 2:11-cv-00418-MHS-CMC (August 17, 2012). All of the lawsuits comprising the DietGoal litigation have been assigned to this Court. This Court has scheduled Scheduling Conference in this case for August 29, 2012. *See Id*., Dkt No. 464.

**Plaintiff DietGoal**. DietGoal is the exclusive licensee of the '516 patent. DietGoal is a Texas Limited Liability Company based in Austin, Texas. DietGoal First Amended Complaint at ¶ 1. Dkt No. 8.

**Defendant Time**. Defendant Time a Delaware corporation headquartered in New York City. Dkt. No. 15-1-Andrew Lachow at ¶2. Time is a wholly owned subsidiary of Time Warner Inc. *Id*. Time is the publisher of multiple established magazines having a range of subjects, including news, sports, entertainment, fashion and life style. *Id*. In addition to its publication business, Time operates a number of websites related to its publications. *Id*. One of the websites that Time operates is the website accused of infringement located at www.realsimple.com (the "Real Simple Website"). *Id*. Time Warner has over 34,000 employees and generated nearly $29 billion in revenue in 2011. *See* Exhibit A.

## ARGUMENT

### A.     Misjoinder

Time asserts that it has been misjoined in the instant action under Rule 20 of the Federal Rules of Procedure based upon the recent decision by the Federal Circuit in *In re EMC Corp.*, 677 F.3d 1351, 1357 (Fed. Cir. 2012).

In view of the Federal Circuit's decision in *In re EMC,* 677 F.3d 1351 (Fed Cir. 2012), DietGoal agrees that severance of the claims against Time in this action is proper.  DietGoal believes that the most prudent and procedurally proper course for the Court to take is sever DietGoal's claims against Time and then simultaneously consolidate the action against Time with all of the other DietGoal actions pending before this Court for pre-trial purposes pursuant to rule 42(a) of the Federal Rules of Civil Procedure.  Rule 42(a) further provides that, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the action; (2) consolidate the actions; or (3) issue any orders to avoid unnecessary cost or delay.").  The Court can determine whether to consolidate any of these severed actions for trial at a later date based upon a more complete record enabling the Court to assess the fairness and efficiencies of a consolidated trial involving two or more Defendants.

The Federal Circuit in *EMC* endorsed this approach when it observed that:

> In exercising its discretion, the district court should keep in mind that even if joinder is not permitted under Rule 20, the <u>district court has considerable discretion to consolidate cases for discovery and for trial under Rule 42 where venue is proper and there is only "a common question of law or fact</u>."  Fed. R. Civ. P. 42(a); *see* 9A Wright et al., *supra*, § 2382 ("[T]he existence of a common question by itself is enough to permit consolidation under Rule 42(a), even if the claims arise out of independent transactions.").  <u>Common pretrial issues of claim construction and patent invalidity may also be adjudicated together</u> through the multidistrict litigation procedures of 28 U.S.C. § 1407. (citations omitted).

*EMC,* 677 F.3d at 1360 (emphasis added).  Eastern District of Texas Local Rule CV-42(b) similarly provides: "[w]hen two or more actions are pending before a judge which involve . . . a common question of law or fact . . . that judge may order that all or part of the actions be consolidated."  The Fifth Circuit

encourages consolidation of cases involving common questions of law or fact "to expedite trial and eliminate unnecessary repetition and confusion." *Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1984).

This court has recently followed the same procedure proposed by DietGoal.

> This Court has limited resources and constantly strives to employ efficient and cost-saving case-management procedures for the benefit of the parties, counsel, and the Court. [Citations omitted]. In response to the AIA's joinder provision, plaintiffs now serially file multiple single-defendant (or defendant group) cases involving the same underlying patents. This presents administrative challenges for the Court and, left unchecked, wastes judicial resources by requiring common issues to be addressed individually for each case. For example, what was once a single motion to substitute parties (or join a plaintiff) becomes multiple motions. [Citation omitted]. These must each be processed by the Court and staff, including review of the underlying motions and docketing individual orders addressing each motion. More substantive motions, particularly where the same arguments are used in each individual case, present even more difficulties. There, the Court is required to waste time digesting duplicate arguments to ensure that new arguments are not hidden among the plethora of common arguments.
>
> ***
>
> Thus, to permit efficient case management, the Court **ORDERS** these newly severed actions consolidated with the original filed case as to all issues, except venue, through pretrial only.

*Norman IP Holdings, LLC v. Lexmark International Inc.*, 6:11-cv-00495-LED, Dkt. No. 253 at 6-7 (E.D. Tex. August 10, 2012). *See also Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Civil Action No. 6:11-CV-234 LED-JDL, Dkt. No. 200 at 28-30 (E.D. Tex. May 30, 2012); *Oasis Research, LLC v. Carbonite, Inc.*, Civil Action No. 4:10-cv-00435-ALM, Dkt. No. 435 at 10-11 (E.D. Tex. August 15, 2012); *Swipe Innovations, LLC v. Elavon, Inc.,* Civil Action No. 9:12-cv-00040-RC, Dkt. No. 134 at 4-5 (E.D. Tex. August 14, 2012). Other courts also have followed this procedure. *See, e.g., InvestPic, LLC v. SAS Institute, Inc.*, Civil Action No. 10-1028 (D. Del. May 15, 2012); *Interval Licensing LLC v. AOL, Inc., et al.*, Civil Action No. C10-1385 (W.D. Wash. April 29, 2011)

Time cannot credibly argue that consolidation of the claims against them and the other defendants sued in this lawsuit is improper. Thus, Time's request for severance should be granted, but the severed

action against it should be simultaneously consolidated with DietGoal's claims against the other defendants in this lawsuit for pretrial purposes.

### B. Motion to Transfer

Time further contends that, if it is not dismissed from this action, the claims against Time should be severed and transferred to the Southern District of New York.

#### 1. Legal Standard

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).

Although the plaintiff's choice of forum is not a factor in the convenience analysis, it contributes to the defendant's burden of showing that the transferee venue is clearly more convenient. *Volkswagen II*, 545 F.3d at 314-15. The plaintiff's choice of venue should rarely be disturbed unless the balance of convenience factors is strongly in favor of the defendants. *Volkswagen II,* 545 F.3d at 315; *Gulf Oil v. Gilbert* 330 U.S. 507 (1947); *see also In re Affymetrix, Inc.*, Misc. No. 913, 2010 WL 1525010, at *1 (Fed. Cir. April 13, 2010) (citing *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64) ("[F]or transfer of venue to be appropriate, [defendant] must make a clear and indisputable showing that on balance, the convenience and interest of justice considerations strongly favor transfer."). Therefore, transfer is not appropriate unless the movant demonstrates good cause by showing that the transferee venue is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 315; *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 2:10-cv-216, 2012 WL 462956, at *5 (E.D. Tex. Feb. 13, 2012).

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

### 2.  Whether the Lawsuit Could be Brought in the Transferee Venue

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. DietGoal does not dispute that its claims against Time could have been brought in the District of New York.

### 3.  Private Interest Factors

#### a.  The Relative Ease of Access to Sources of Proof

The court must consider the physical location and volume of documents possessed by each party in relation to the transferee and transferor venues. *See Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009). Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See In re Volkswagen II*, 545 F.3d at 316. This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech*, 566 F.3d at 1345.

Although Time has shown that its offices are located in the proposed transferee forum – the Southern District of New York – it has not submitted any evidence that any appreciable number of documents are actually located at those offices.  Instead, it generally asserts that Time's documents are merely located in New York, and that "Time would face unnecessary burdens transporting its documents to the Eastern District of Texas, but would not face those burdens if the case is transferred." Dkt. No. 15 at 9.  This vague and general statement amounts to, at best, a minimal showing that any documents relevant to this case are located at Time's headquarters in New York.  See *Portal Technologies LLC v IAC/InteractiveCorp.*, Civil Action No. 2:11-cv-00439-JRG-RSP, Dkt. No. 59 at 3 (E.D. Tex. August 15, 2012) ("defendants identify no significant sources of proof in New York other than their own employees and records.")  Thus, looking at Time's evidence in the most favorable light, this factor only slightly favors transfer.

### b. The Availability of Compulsory Process to Secure the Attendance of Witnesses

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue.  See *In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.  Importantly, the defendant bears the burden of identifying unwilling third party witnesses that would benefit from the transfer.  *Effectively Illuminated Pathways, LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34, slip op. at 5 (E.D. Tex. April 19, 2012); *see also Texas Data Co., LLC v. Target Brands, Inc.,* 771 F.Supp. 2d 630, 643 (E.D. Tex. 2011).   As this Court declared in *Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Civil Action No. 6:11-CV-234 LED-JDL (E.D. Tex. May 30, 2012), "the Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum." *Id*. at 13.  *See also NovelPoint*, 2010 WL 5068146, at*6 (E.D. Tex. Dec. 6, 2010) (noting that the Court will not base

its conclusion on unidentified witnesses); *West Coast Trends*, *Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011) (same).

Time has pointed to unidentified "Conde Nast employees" as third party witnesses located in New York who supposedly have "[k]nowledge of prior art recipe website Epicurious.com." Dkt. No. 15 at 4. As discussed immediately above, however, unidentified witnesses are not entitled to any weight in the transfer analysis. Furthermore, Time fails to provide any explanation regarding the relevance of this "Epicurious.com" prior art. Time merely attaches a screenshot of this website without any explanation regarding how this prior art arguably discloses any elements of the claims of the `516 patent. This is another reason why the Court should not take into account these witnesses. *See Jaipuria v. LinkedIn Corporation*, Civil Action No. 6:11-cv-00066-LED, Dkt. No. 84 at 7-8 (E.D. Tex. March 29, 2012) ("while LinkedIn identifies a greater number of third-party witnesses, they have not identified the prior art about which the prior art inventors are expected to testify or even how these prior art references are relevant to the Jaipuria patents.")

Time also identifies three former employees who have "knowledge of development of Time's accused technology." Dkt. No. 15 at 4. Time explains that these witnesses were involved in some unspecified manner in the "design and development" of "technology developed by Time years ago called AOL Food 'Recipe Finder.'" Dkt. No. 15 at 7. Time, however, fails to explain what relevance the design and development of the AOL Food "Recipe Finder" has to any issues in this case. Time also does not indicate what testimony these witnesses could add to the testimony of Time's employees identified as witnesses. "A district court should assess the relevance and materiality of the information the witness may provide" in connection with a transfer of venue motion. *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Thus, these witnesses should not be given any weight in that analysis.

Time also points to DietGoal's managers who live in the New York area, but party witnesses are not taken into account when discussing the availability of compulsory process. *Promote Innovation LLC*

*v. Ortho-McNeil Pharm., LLC*, No. 2:10cv109, 2011 U.S. Dist. LEXIS 15408, at *9 (E.D. Tex. Jan. 12, 2011) ("[C]urrent employees have an employment relationship with a party and should be considered party witnesses."). Therefore, the availability or unavailability of compulsory process as to these DietGoal managers need not be considered.

Time also identifies as third party witnesses the inventor of the `516 patent, Oliver Alabaster, who apparently resides in Virginia, and the attorney who prosecuted the application for the `516 patent, Steven Kelber, who apparently resides in the Bethesda, Maryland area. Dkt. No. 15 at 7-8. Neither of these witnesses, however, is subject to the subpoena power of the Southern District of Texas. Furthermore, both of these witnesses will have to travel a substantial distance regardless of whether this case is transferred to New York or not. "When a particular witness will be required to travel 'a significant distance no matter where they testify,' then that witness is discounted for purposes of the "100 mile rule" analysis." *i2 Technologies, Inc. v. Oracle Corp.*, 2010 WL 3257645 at 6 (E. D. Tex. Aug. 17, 2010). Although New York is somewhat closer to Maryland and Virginia area than Texas, the marginal increased burden for these witnesses to travel to the Eastern District of Texas is not substantial. *See also In re Genentech*, 566 F.3d t 1344.

Finally, Time lists various individuals apparently identified in prior art cited on the face of the `516 patent as "prior art witnesses." Time's improper attempt to inflate the number of third party witnesses in this manner should be rejected. First and foremost, Time does not identify the current or even recent location of any of these witnesses. Time merely has taken the location of these witnesses at the time the prior art was created. There is no reasonable basis to assume that any of these witnesses are still located in the same place where they lived more than a decade ago. "Because the Court is reluctant to give much weight to witnesses whose locations are speculative, these individuals will be given little weight in the convenience analysis." *Azure Networks, LLC v. CSR, PLC*, Civil Action No. 6:11cv139 LED-JDL at 13 (E.D. Tex. June 25, 2012). Furthermore, two of the identified witnesses previously resided in

Arizona and California – closer to Texas than New York City.  Another witness was from Japan – clearly not to be considered in the transfer analysis.

Moreover, the relevance of any testimony is highly questionable, given that patents are presumed valid, an accused infringer must prove invalidity by clear and convincing evidence, and this burden is especially high where the accused infringer asserts prior art considered during prosecution, as the USPTO is entitled to the deference accorded to a government agency performing its specified function. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011); *Hewlett-Packard v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990).  Thus, Time has failed to present any credible evidence that any third party witnesses are located in or near the proposed transferee forum.  This factor, therefore, is neutral.

   c. **The Cost of Attendance for Willing Witnesses**

All parties and witnesses must be considered in the analysis of this factor. *Volkswagen I*, 371 F.3d at 204.  "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.' " *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal citations omitted).  Additionally, the convenience of non-party witnesses is given greater weight than that of party witnesses. *Stragent*, 2011 WL 2912907, at *7; *NovelPoint*, 2010 WL 5068146, at *6; *see also BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F.Supp. 2d 703, 711 (N.D. Tex. 2009).

Although Time identifies three employee witnesses, it lamely asserts that these are "employees who likely have technical, marketing, or financial information regarding the accused realsimple.com website." Dkt. No. 15 at 3.  The convenience of non-party witnesses is given greater weight than that of

party witnesses, however. *Stragent*, 2011 WL 2912907, at *7; *NovelPoint*, 2010 WL 5068146, at *6; *see also BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009).

Furthermore, the cost of attendance at trial in New York while in New York would be significantly greater than trial in this forum because of the increased food and lodging costs and the longer expected trial length in New York City. The per diem rates for fiscal year 2012 published by the General Services Administration show that the Boston, New York per diem rate for lodging averages almost three times as much as in the Eastern District of Texas. *See* Exhibit B. Also, Time has substantial operations in the State of Texas and elsewhere, and its parent company generated over $28 billion in annual revenues last year. Thus, the relative burden to Time to attend trial in this forum is not as great as the burden to DietGoal and its witnesses to travel to New York to attend trial. Thus, this factor slightly favors transfer, at most.

    **d.  Other Practical Problems**

The goal of §1404(a) is to "prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). As a result, in appropriate circumstances, courts have analyzed the goal of preventing unnecessary inconvenience and expense under the rubric of "judicial economy." Furthermore, "courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010) (citing *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960))(additional citation omitted); *see also* 28 U.S.C. §1404(a) ("For the convenience of the parties and witnesses, in the interest of justice") (emphasis added). Thus, although judicial economy is not among the list of enumerated *Gilbert* factors, it is "a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice . . . [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different

District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). Although patent infringement cases "may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources." *Volkswagen*, 566 F.3d at 1351.

Transfer of DietGoal's claims against Time to New York would not promote judicial economy in this case. Only Time and eight other defendants among the 47 defendants in the DietGoal litigation have sought transfer of DietGoal's claims against them to another forum. Therefore, transferring DietGoal's claims against Time and the other defendants who have filed transfer of venue motions would splinter this litigation into at 26 separate actions pending in nine separate forums, leaving dozens of defendants in the litigation pending in this forum.[1] Each of these separate actions will involve similar issues of claim validity, claim construction, claim scope, discovery, evidence, proceedings, and trial. Transferring DietGoal's claims against Time would create duplicative, parallel proceedings on the same patent, unnecessarily wasting judicial resources and raising the specter of inconsistent adjudication. In short, transfer would squarely contradict the goals of §1404(a). *See Van Dusen,* 376 U.S. at 616 (opining that the goal of §1404(a) is to "prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense"). Thus, especially in view of the weak showing of private factors favoring transfer, this is a situation where judicial economy is a "paramount consideration in determining whether transfer is in the interest of justice." *Volkswagen II*, 565 F.3d at 1351. Time completely ignores this factor. Transfer should be denied for this reason alone. This Court has denied motions to transfer on this ground in several cases with even less compelling circumstances than the DietGoal litigation presents. *See Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Civil Action No. 6:11-CV-234 LED-JDL (E.D. Tex. May 30, 2012); *Patent Harbor, LLC v. Twentieth Century Fox Home Entertainment, LLC*, Civil Action No. 6:10-CV-607 LED-JDL (May 25, 2012).

---

[1] Of the ten defendants who have filed motions to transfer, only three have requested transfer to the Southern District of New York. *See* Exhibit C.

This Court has recently denied motions to transfer under similar circumstances for these very same reasons. In *Tivo, Inc. v. Cisco Systems, Inc.*, Civil Action No. 2:12-cv-00311-JRG, Dkt. No. 27 (E.D. Tex. August 13, 2012), for example, this Court denied a motion to transfer, declaring as follows:

> This Court agrees with Judge Seeborg that, for purposes of efficiency judicial economy, the entire dispute between Cisco and Tivo is best tried in the same court, along with the other closely related cases involving these same parties and patents. Tivo, Verizon, Motorola, Time Warner Cable, and Cisco are all parties to the above proceedings in this District involving the same patents in dispute. Accordingly, the EDTX is in a unique position to completely adjudicate the overlapping disputes among all parties involved. Further, this Court can avoid duplicative actions, depositions, and discovery, and will be able to coordinate common schedules appropriately to address streamlined disputes shared in all of these related cases.

*Id*. at 2-3. The Court in *Tivo* also pointed out that denial of a motion to transfer on judicial economy grounds is justified "where there are some differences in the retained cases," and emphasized that "the Federal Circuit has held that mandamus is inappropriate when two cases may not involve precisely the same issues, but there will be significant overlap and a familiarity with the patents that could preserve time and resources." *Id*. at 3 (citing *In re Volkswagen of America, Inc.,* 566 F.3d 1349, 1351 (Fed. Cir. 2009)).

Similarly, in *Portal Technologies LLC v Yahoo! Inc.*, Civil Action No. 2:11-cv-00440-JRG, Dkt. No. 44 at 8 (E.D. Tex. August 7, 2012), the Court denied a motion to transfer on judicial economy grounds for the following reasons:

> In this case, all three *Portal* cases currently pending in this Court involve common questions of claim construction and validity. While the Court has not formally consolidated these cases for pretrial purposes, the *Markman* hearing dates for at least two cases (the present case and 2:11-cv-438) are scheduled for the same time and the Court intends, at a minimum, to consolidate the *Markman* hearing and related briefing between these two cases. Because there are several other *Portal* cases pending in this Court, traditional notions of judicial economy weigh against transfer.

*Id*. at 8.[2]

---

[2] *See also Oasis Research, LLC v. Carbonite, Inc.*, Civil Action No. 4:12-cv-00525-ALM, Dkt. No. 5 at 8-9 (E.D. Tex. August 21, 2012) ("the Court agrees that the conservation of resources and avoiding

The Court may deny motions to transfer based on judicial economy alone. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed. Cir. 2010) (holding that district court may properly deny § 1404(a) transfer based on judicial economy even "when all of the convenience factors clearly favor transfer."); *In re Google,* 412 F. App'x 295, 296 (Fed. Cir. 2011) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective.").[3]

In this case, not only has Time failed to meet its burden to show that the Southern District of New York is a "clearly more convenient forum" for this litigation, but the burden that would be imposed on the federal court system by the transfer of this case, as well as the efficient administration of court proceedings and conserving judicial resources weighs heavily against transfer.

Finally, even though this case is still in the early stages of litigation, practical problems include those that are "rationally based on judicial economy." *Digital Reg of Texas, LLC v. Adobe Systems, Inc., et al.*, C.A. No. 6:11cv305-LED (E.D. Tex. March 28, 2012).

---

duplicative suits in the interest of judicial economy weighs heavily against transfer. . . . Plaintiff argues, and the Court agrees, that the factor of judicial economy weighs heavily against transfer in this case. If this Court were to transfer this litigation to Massachusetts, another court would have to spend significant resources to familiarize itself with the patents, prosecution history, claim construction, and other issues in this case.")

[3] *See also Oasis Research, LLC v. Carbonite, Inc.*, Civil Action No. 4:12-cv-00525-ALM, *supra*, Dkt. No. 5 at 10 ("The Court may deny motions to transfer based on judicial economy alone."); *Centre One v. Vonage Holdings, Corp.*, No. 6:08-CV-467, 2009 WL 2461003, at *7 (E.D. Tex. Aug. 10, 2009) (Davis, C.J.) (holding that the defendant's "convenience alone fails to outweigh the glaring inefficiency of prosecuting two, nearly identical, complex patent infringement cases in different fora."); *Adrain v. Genetec Inc.*, No. 2:08-CV-423, 2009 WL 3063414, at *3 ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication.").

3.  **Public Interest Factors**

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. A proposed transferee court's "less congested docket" and "ab[ility] to resolve this dispute more quickly" is a factor to be considered. *In re Hoffmann-La Roche*, 587 F.3d at 1336. This factor weighs heavily against transfer. The median time from filing to trial in the District of New York is seven months longer than in the Eastern District of Texas. *See* Exhibit C.

## CONCLUSION

The Court should sever DietGoal's claims against Time and simultaneously consolidate these claims against Time with the other DietGoal litigation pending before this Court for pretrial purposes. The Court should also deny Time's motion to transfer in the interests of justice and to promote judicial economy.

Dated:  August 28, 2012                              Respectfully submitted,

                                                  **BUETHER JOE & CARPENTER, LLC**

                                          By:  */s/ Eric W. Buether*
                                                  Christopher M. Joe
                                                  State Bar No. 00787770
                                                  Chris.Joe@BJCIPLaw.com
                                                  Eric W. Buether
                                                  State Bar No. 03316880
                                                  Eric.Buether@BJCIPLaw.com
                                                  Niky Bukovcan
                                                  State Bar No. 24078287
                                                  Niky.Bukovcan@BJCIPLaw.com

                                                  1700 Pacific Avenue
                                                  Suite 4750
                                                  Dallas, Texas 75201
                                                  Telephone:  (214) 466-1271
                                                  Facsimile:    (214) 635-1827

                                                  **ATTORNEYS FOR PLAINTIFF**
                                                  **DIETGOAL INNOVATIONS LLC**

PLAINTIFF DIETGOAL INNOVATIONS LLC'S RESPONSE
TO TIME, INC,'S MOTION TO TRANSFER VENUE                                                                                      Page 15

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 28, 2012, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

              */s/ Eric W. Buether*
              Eric W. Buether